**NEW PITTSBURGH COAL CO. v. UNITED STATES.**

Civ. 3507.

United States District Court
S. D. Ohio, E. D.

April 7, 1949.

Chalmers M. Parker and Robert D. Tou-Velle, Columbus, Ohio, for plaintiff.

Ray J. O'Donnell, U. S. Atty., Columbus, Ohio, for defendant.

MELL G. UNDERWOOD, District Judge.

This is an action wherein plaintiff seeks to recover $11,654.76 of an alleged over-payment of taxes, with interest, as provided by law.

The alleged over-assessment involved herein resulted from the government's listing certain items of equipment and supplies used by plaintiff as capital items rather than expense items for the tax year 1920.

The case was heard by the Court beginning July 17, 1945 and the Court having carefully considered the evidence, and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. The taxpayer is an Ohio Corporation with its principal place of business in Cincinnati. It was organized on December 31, 1923, by the merger and consolidation of the Great Lakes Coal Mining Company and the New Pittsburgh Coal Company. The taxpayer thereby acquired the assets of these two companies and succeeded to the business of each.

2. The Great Lakes Coal Mining Company was organized in 1917 and acquired coal mining properties in Ohio which it operated during the period involved in the instant action. The Great Lakes Coal Mining Company filed tentative and final income and excess profits tax returns for the calendar year 1920 and paid the tax as indicated therein in the amount of $180,502.-42.

3. The law under which the taxes now under consideration were assessed, collected and paid is the Act of February 24, 1919, 40 Stat. 1057, entitled "An Act To provide revenue, and for other purposes" and known as the Revenue Act of 1918, and particularly Titles 2 and 3 of said Act. The applicable Treasury Regulation is 45 (1920 edition), Article 222, which reads:

"Allowable capital addition in case of mines. * * *

"B. All expenditures for plant and equipment shall be charged to capital account recoverable through depreciation, while the mine is in the development stage. Thereafter the cost of major items of plant and equipment shall be capitalized but the cost of minor items of equipment and plant, necessary to maintain the normal output and the cost of replacement may be charged to current expense of operation."

4. The Commissioner of Internal Revenue, after an examination of the returns and an investigation, assessed a deficiency tax against the taxpayer for 1920 in the total amount, with interest, of $13,116.63, which was paid by the taxpayer on June 23, 1927. Of this amount $12,892.47 was assessed because of the Commissioner's determination that the cost of certain items of equipment as listed, which Great Lakes Company had charged to expense in 1920, should have been charged to capital and was erroneously deducted by the taxpayer from gross income as a current business expense in the tax return. These items were:

| Mine | Voucher Number. | Items | |
|---|---|---|---|
| ( 1) No. 2 | 8154 | 4/0 copper wire | 361.75 |
| ( 2) No. 2 | 8154 | do | 362.66 |
| ( 3) Nos. 3 & 4 | 8154 | do | 137.43 |
| ( 4) Nos. 3 & 4 | 8154 | do | 217.54 |
| ( 5) Nos. 3 & 4 | 9069 | 1 Electric hoist | 3,372.59 |
| ( 6) Nos. 3 & 4 | 699 | 4/0 copper wire | 929.91 |
| ( 7) No. 14 | 8849Q | 40# rails | 1,200.00 |
| ( 8) No. 14 | 8849Q | 80# rails | 900.00 |
| ( 9) No. 14 | 8849Q | 4/0 copper wire | 250.00 |
| (10) No. 14 | 1295 | 12 mine cars | 1,171.20 |
| (11) No. 14 | 1295 | 33 mine cars | 3,220.80 |
| (12) No. 15 | 1063 | 40# rails | 3,246.83 |
| (13) No. 16 | 8849Q | 40# rails | 420.00 |
| (14) No. 16 | 8849Q | 4/0 Trolley wire | 151.20 |
| (15) No. 16 | 8849Q | 80# rails | 720.00 |
| (16) No. 16 | 9735 | 3 transformers | 1,745.71 |
| (17) No. 16 | 528 | 50 mine cars | 5,775.00 |
| (18) No. 16 | 1295 | 15 mine cars | 1,464.00 |
| (19) Office fixtures | 8947 | 1 adding machine | 200.00 |
| (20) Office fixtures | 9263 | 1 adding machine | 275.00 |
| (21) This amount charged to operating cost—supplies | | | 26,121.62 |
| Miners Houses | | | |
| (22) Nos. 1, 2, 3, 4 | 1111 | 1 furnace for house | 560.00 |
| (23) | 1167 | 1 freight elevator in store | 581.46 |
| (24) This amount charged to house repairs and maintenance | | | $ 1,141.46 |

5. Thereafter the taxpayer duly filed a claim for refund which was allowed by the Commissioner of Internal Revenue in the amount of $1,237.71, with interest, which was paid on August 30, 1933, but which was disallowed, by letter dated September 7, 1933, as to the balance of the claim, in the amount of $11,654.76, for a recovery of which, with interest, taxpayer brought this action.

6. On December 5, 1933 the taxpayer requested the Commissioner of Internal Revenue to reopen and to reconsider the claim. This request was denied by letter dated March 31, 1934.

7. The refund allowed and paid by the Commissioner in the above amount of $1,-237.71, resulted from a determination by the Commissioner that the cost of the copper wire and trolley wire, items 1, 2, 3, 4, 6, 9 and 14 in the schedule, supra, amounting to $2,410.49, constituted current expense and was deductible from gross income, thus reducing the gross cost of the items involved in the instant action to $24,852.59, which amount was further reduced to $23,-609.96 by reason of deducting the sum of $1,242.63 from the gross cost, for depreciation figured thereon.

8. At the time of the expenditures set forth in Finding of Fact No. 4 above, said mines had been fully developed and equipped to their predesigned and normal output capacity.

The mines in eastern Ohio had been in operation for many years and the mine workings in each mine were extensive.

Mines #14 (Dark Hollow), 15 (Forrest Run), and 16 (Syracuse) had been developed and equipped to produce, and on June 1, 1920 and thereafter during the year 1920, were capable of producing their predesigned and expected maximum tonnage

9. The Thomas Mine, from which all of the coal, except barriers and pillars, had been removed, was purchased in 1920 for the purpose of using the entries in said mine as haulage-ways for the removal of the Syracuse coal lying east of the Thomas mine workings.

10. The installation of an electric hoist at Mines Nos. 3 and 4 (Reiss) in 1920 was necessary to enable plaintiff to dispose of refuse from said mines. The hoist was installed for the purpose of maintaining established production and did not increase the production from the mines.

11. The 80 pound rails charged in 1920 to Mine #14 (Dark Hollow) were used to build a track for a slate larry that was necessary to dispose of refuse from the mine. The installation of this track and the operation of the slate larry did not increase the production or decrease the cost of operation of Mine #14.

12. There is no evidence as to the exact use made of any of the 40 pound rails in question in this lawsuit.

13. The rails charged in 1920 to Mine #16 (Syracuse) were used to build the temporary storage track which was used solely for the purpose of storing empty cars during the period of the railroad car shortage.

14. The three transformers purchased in 1920, all for the amount of $1,745.71 were used to extend the power lines to the coal in the Syracuse Mine as the working faces receded during the progress of the work.

15. The mine cars which plaintiff here claims should have been charged to operating expense were delivered to Mines #14 (Dark Hollow) and #16 (Syracuse) during the latter part of the year 1920 and were immediately put in use in said mines. The use of additional cars was made necessary by the receding working faces and the consequently longer hauls from the working faces to the tipples.

16. There is no evidence that the adding machines purchased and put in use in 1920 in the mine office at Adean were necessary for maintaining the normal output of the mines.

17. There is no evidence that the furnace which was installed in the superintendent's office at Robyville (Mine #3) was necessary to maintain the normal output of the mine.

18. There is no evidence that the freight elevator that was installed in the store at Robyville in 1920 was necessary to maintain the normal output of the mine.

19. The taxpayer's original tax return for the year 1918 which was filed in the Department of Internal Revenue, bears the stamp "Agreement Under Section 606, Years 1918, Schedule 4566". The taxpayer's original tax return for the year 1920 bears no such stamp.

20. There is no evidence that any previous closing agreement of any other tax settlement accomplished a settlement of the tax questions involved in this lawsuit.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this action.

■ 2. In considering whether an item should be charged to expense or capital investment, the purpose of the expenditure and established accounting practice are facts which should be weighed.

■ 3. Minor items of equipment which are purchased for the purpose of maintaining the normal output and which do not add to the capital value of the mine, may be charged to current expense of operation.

4. This claim for refund of an overassessment for the year 1920 has not been settled by any closing agreement or account stated.

■ 5. The Commissioner improperly charged the following items and amounts to capital.

| | |
|---|---:|
| (a) 1 electric hoist used in Mines Nos. 3 and 4. | $ 3,372.59 |
| (b) The 80 pound rails used in Mine No. 14 | 900.00 |
| (c) 110 mine cars used in Mine Nos. 14 and 16 | 11,633.00 |
| (d) 3 transformers used in Mine No. 16 | 1,745.71 |

■ 6. Plaintiff has failed to prove that the Commissioner improperly charged the following items and amounts to capital.

| | |
|---|---:|
| (a) All of the 40 pound rails purchased | $ 4,866.83 |
| (b) The 80 pound rails used in Mine #16 | 720.00 |
| (c) The adding machines | 475.00 |
| (d) The furnace | 560.00 |
| (e) The freight elevator | 581.61 |

7. Plaintiff is entitled to a refund of taxes in accordance with the findings herein, and further plaintiff is entitled to recover the court costs.